IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RASHIKA PORTER,                    )
                                   )
                 Plaintiff,        )
                                   )
        vs.                        )        Civil Action No. 20-1588
                                   )
ALLEGHENY COUNTY, et al.,          )        Magistrate Judge Dodge
                                   )
                 Defendants.       )

**MEMORANDUM OPINION**

Plaintiff Rashika Porter, who was previously incarcerated at the Allegheny County Jail ("ACJ"), brings this counseled civil rights action under 42 U.S.C. § 1983 relating to certain conditions and events that occurred at that facility.

Presently pending before the Court is Defendants' motion to dismiss the Fourth Amended Complaint (ECF No. 60). For the reasons that follow, the motion will be granted in part and denied in part.[1]

## I.    Relevant Procedural Background

Plaintiff commenced this action in October 2020, naming Allegheny County, Corrections Officer Jay Lafever,[2] and nine John Doe defendants. The claims in the original Complaint related to issues regarding his medical care, denial of a gluten-free diet and retaliatory punishment (ECF No. 1). Plaintiff filed an Amended Complaint in March 2021, in which he alleged additional details but no new claims (ECF No. 23). Defendants filed an Answer to both Complaints. (ECF Nos. 11, 24.)

---

[1] The parties have fully consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

[2] Defendants indicate that this individual's name is actually spelled "LeFevre."

In May 2021, with Defendants' consent, Plaintiff filed a Second Amended Complaint ("SAC") that added eight new defendants and two additional causes of action (ECF No. 27). Named as defendants were Allegheny County, ACJ Warden Orlando L. Harper, Chief Deputy Warden of Healthcare Services Laura Williams, Corrections Officers Jay Lafever, Hunter Sarver and Louis Del Prete (together, the "County Defendants"). The SAC also brought claims against Medical Director Dr. Donald Stechschulte, Dr. Nancy Park, physician's assistant Maria Chrzastowska and a nurse identified only as "Michael LNU." These medical defendants were dismissed from the case on November 17, 2021 (ECF No. 45) after Plaintiff failed to timely serve them. In addition, the SAC named as defendants ten "John Does," all of whom were alleged to be ACJ employees.

The County Defendants moved to dismiss the SAC (ECF No. 32). However, the motion was denied as moot (ECF No. 51) after Plaintiff requested and was granted leave to file a Third Amended Complaint (ECF No. 50). The Third Amended Complaint eliminated the John Doe defendants and removed certain causes of action that Plaintiff acknowledged should be dismissed.

On December 13, 2021, the case was stayed and administratively closed at Plaintiff's request pending his release from custody (ECF No. 53). The stay was subsequently lifted and the case was reopened on May 11, 2022 (ECF No. 55).

On June 6, 2022, again with Defendants' consent, Plaintiff filed a Fourth Amended Complaint ("FAC"), which was later corrected (ECF No. 59). The corrected FAC is the operative Complaint. In Count I of the FAC, Plaintiff alleges that he was subjected to retaliation by the County and Del Prete after he complained about the lack of medical care and the failure to provide a gluten-free diet, and because he asked for the names of the ACJ officers who stole his

property. He alleges that this conduct represents a violation of his rights under the First Amendment. He also asserts a Fourteenth Amendment substantive due process claim against the County, Lafever and Del Prete for failing to provide him with medical treatment in Count II. In Count III, Plaintiff raises a substantive due process claim against the County, Harper, Williams, Sarver and Del Prete arising out of their failure to protect him from the COVID-19 virus. Finally, Plaintiff asserts a substantive due process claim against the County for failing to provide him a gluten-free diet in Count IV.

The County Defendants have filed a motion to dismiss (ECF No. 60), which has been fully briefed (ECF Nos. 61, 63).

## II.   Facts Alleged in the Fourth Amended Complaint

### A.   Facts Related to First Amendment Retaliation Claim

Upon his incarceration in the ACJ, Plaintiff's jewelry was confiscated and submitted to the property room in the jail. When he was later transferred from the ACJ to a correctional facility in Ohio, he was informed that he could not take his property with him. A "Mr. Toriano" ("Toriano") complimented his earrings and told Plaintiff that he would place them in the office so that they would not be stolen. Toriano then took possession of Plaintiff's jewelry. Later, when Plaintiff's girlfriend went to pick up his property from the ACJ, his jewelry was missing. He was not permitted to file a grievance about this issue because he was not housed at the ACJ at that time. (FAC ¶¶ 12-20.)

When Plaintiff returned to the custody of the ACJ at a later, and unspecified, time, he filed a grievance regarding his missing property. In September or October 2017, his grievance was found to be valid, and Mr. Toriano was found to be responsible. No resolution of his grievance was forthcoming, however. Plaintiff subsequently filed multiple grievances about his

missing property, but all of them went unaddressed. He also requested the names of the involved ACJ employees so that he could file a federal lawsuit against them. (*Id.* ¶¶ 21-25.) In May 2020, the Property Supervisor, Bryan Joseph, finally acknowledged these grievances and promised to "look into" the missing property. Joseph later deemed Plaintiff's grievances to be "valid" and recommended that he should be reimbursed for the value of his property. (*Id.* ¶¶ 26-28.)

Plaintiff alleges that he was subjected to retaliation for these inquiries as well as for his complaints about the failure to provide him with medical care and a gluten-free diet, as detailed below. (*Id.* ¶ 30-32.)

### B.   Facts Related to Medical Treatment

Due to Plaintiff's heart condition, he was prescribed Hydroclorothiazide. As described at length in the FAC, this medication was prescribed and then discontinued multiple times because it caused or exacerbated certain conditions. He filed a grievance related to this issue. (*Id.* ¶¶ 36-39.)

In March 2020, nurse "Michael" threatened Plaintiff with punishment if he continued to "ask for medical advice when there is nothing wrong with him." Plaintiff filed a grievance based on this threat and the lack of medical care. His grievance was denied because he was seen by the jail's medical staff. (*Id.* ¶¶ 40-42.)

Plaintiff reported severe abdominal pain about a month later, but was instructed by Physician Assistant Chrzastowska, who refused to examine or treat him, to "just deal with the pain." Plaintiff's grievances about his claims regarding the lack of medical care as well as his ongoing pain were found to be "invalid" because the ACJ had scheduled an appointment for him to see an outside gastroenterologist. (*Id.* ¶¶ 43-45.)

Thereafter, Plaintiff filed multiple grievances in April and May 2020 based on the lack

of medical care. (*Id.* ¶¶ 46-49.) In a grievance dated May 28, 2020, he noted that "he had on three separate occasions requested medical treatment via 'sick-call,' but he was not provided treatment or even seen." These grievances were also determined to be "invalid" because an appointment had been made for him to see an outside gastroenterologist. (*Id.* ¶¶ 50-51.)

Plaintiff alleges that he had a medical emergency on June 19, 2020 and was taken to the infirmary. An electrocardiogram was performed, which revealed, among other things, sinus tachycardia, possible left atrial enlargement and an abnormal rhythm ECG. His heart rate and blood pressure were also elevated. A second electrocardiogram was performed with the same results. These results were not shown to him at that time; instead, Dr. Stechschulte indicated that the test was "essentially unremarkable." Plaintiff was told to return to his cell but insisted that something was wrong with him. (*Id.* ¶¶ 52-59.) As a result, Plaintiff was sent to "the hole," by "Corrections Officer Doe" because by insisting that he was sick, he was considered to have refused an order and was being punished. (*Id.* ¶ 60.)

Plaintiff was again taken to the infirmary for what he alleges was a medical emergency on July 6, 2020. The infirmary determined that he had an elevated blood pressure. Dr. Park referred him to a psychiatrist instead of providing treatment for a cardiac condition. Plaintiff later filed a grievance relating to this episode. (*Id.* ¶¶ 61-64.)

Several days later, Plaintiff, who was positive for COVID-19, was found to have a fever during an examination, but was denied Tylenol and told to just drink more water. At around the same time, he was taken off the blood pressure medication that he had taken for years to control his condition because his pressure was, according to Dr. Stechschulte, "trending low." He filed several grievances which Del Prete found to be "invalid" because of the potential side effects of Tylenol. (*Id.* ¶¶ 65-68.)

Between March and July 2020, numerous medical appointments were scheduled for Plaintiff to be examined by gastroenterologists and/or cardiologists, but all of these appointments were cancelled by John Doe(s) at the instruction of Del Prete in order to punish Plaintiff for complaining about jail conditions. His grievance about these cancellations were determined by Del Prete to be "invalid," because, according to Del Prete, ACJ was trying to "get [Mr. Porter] seen." (*Id.* ¶¶ 69-71.)

Plaintiff subsequently filed several grievances in September 2020 because of cancelled medical appointments. One of these grievances complained of "deliberate indifference" to his medical needs; the failure to review or communicate the results of an ultrasound test; his uncontrolled high blood pressure; the failure to adhere to his gluten dietary restrictions; and his continued complaints of severe pain since March 2020. (*Id.* ¶¶ 72-73.)

Plaintiff received an ultrasound examination in August 2020 due to complaints of pain. Although a cyst was found on his kidney, he was not informed of this or given any further treatment. After learning about the cyst through his own review of his medical records, he was told by ACJ employee Ester Stanton that no one had looked at the test results because "that's not important." He later filed a grievance about this issue that was denied because the cyst was benign. (*Id.* ¶¶ 74-77.)

When Plaintiff later questioned why a particular medication was doubled, he was punished by Lafever with a 48-hour cell restriction for "getting hostile and disrespectful." He grieved this issue. (*Id.* ¶¶ 78-82.)

Plaintiff also alleges that he was denied COVID-19 testing, including on or about March 4, 2021, despite being negligently exposed to the disease due to the housing assignments of inmates with the disease not being properly segregated from other inmates. Further, his blood

pressure was not appropriately monitored as medically required due to his medications. He was also put on a psychiatric medication even though he was not suffering from a psychiatric condition, nor had he been evaluated by a psychiatrist. (*Id.* ¶¶ 83-86.)

In April 2021, Plaintiff went to the infirmary because of high blood pressure and a variety of other complaints. He was told that it was not an emergency situation, and to await his upcoming cardiology appointment. However, while waiting to be discharged he encountered Dr. Winters, who was surprised that Plaintiff had not yet seen a cardiologist and sent him to the hospital. Upon his return to the ACJ, his blood pressure was only checked sporadically. (*Id.* ¶¶ 87-96.)

Later in April, Plaintiff filed a request for sick call but instead of receiving cardiac treatment, he was seen by a psychiatrist. The psychiatrist indicated that he would speak to Del Prete, who was responsible for making medical appointments, to advise him that a specialist appointment was imperative. Plaintiff alleges that Del Prete maliciously cancelled his previous specialist appointments in retaliation for his requests for medical care and his exercise of his First Amendment rights. (*Id.* ¶¶ 97-98.)

C.   Facts Relating to COVID-19

Plaintiff alleges that Defendants breached their duty to protect him from harm related to COVID-19. According to Plaintiff, Williams stated in April 2020 that ACJ is "not able to combat the virus if the virus enters the jail." Sarver refused to provide him with a mask on April 7, 2020 despite distributing them to others, cursed at him, threatened to punish him if he asked for one again and told him he did not care about his health. Plaintiff's subsequent grievance was denied because "Mr. Terry" concluded that Sarver "went door to door delivering masks to anyone who wanted one." (*Id.* ¶¶ 102-06.)

Plaintiff also complains about a number of other deficiencies related to protection from COVID-19, including supplying the wrong kind of hand sanitizer, allowing kitchen personnel to prepare meals without screening them for the disease and failing to implement the policy mandated by court order regarding social distancing. Harper and Williams allowed twenty inmates to be in the same area, although the policy allowed only ten. As a result, Plaintiff became infected with COVID-19. Further, Dr. Stechschulte failed to wear a mask when treating inmates, including Plaintiff, on multiple occasions. His multiple grievances regarding these issues were denied because Del Prete falsely stated that he failed to provide the date and time of the incident and misspelled the word "negligence." (*Id.* ¶¶ 107-27.)

### D.  Facts Relating to Gluten-Free Diet

Plaintiff is unable to properly process and/or digest gluten, and ACJ was aware of this based on tests conducted during his detention. As a result, he was placed on gluten diet restrictions. He was also on cardiac diet restrictions. According to Plaintiff, Defendants breached their duty of care and responsibility to provide him with nourishment because they failed to provide him with a gluten free diet. His grievances about this issue were denied because there was not an order from John Doe(s) to replace his cardiac diet with a gluten-free diet and they were waiting for the results of his gastroenterology appointment, which was scheduled and delayed numerous times. Shortly after this lawsuit was filed, he was provided gluten-free meals. (*Id.* ¶¶ 132-42.)

## III.  **Standard of Review**

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v.*

*Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted). However, factors that weigh against amendment include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, attached exhibits and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). The County Defendants have attached to their motion to dismiss a Consent Order entered by Judge Bissoon in *Graham v. Allegheny County*, No. 20-496, which is a public record.[3] This

---

[3] In the *Graham* case, the County entered into a Consent Decree concerning COVID-19

document can be considered in connection with the motion to dismiss without converting it into a motion for summary judgment. *See Group Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016) (considering Consent Decree and Consent Order as part of a motion to dismiss as "public records").

**IV.** **Analysis**

Plaintiff's claims are asserted under 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). *See also Baker*, 443 U.S. at 140; *Graham v. Connor*, 490 U.S. 386, 394 (1989).

The FAC alleges violations of the First Amendment, which protects freedom of speech and prohibits retaliation for exercising this right. Plaintiff has also brought claims under the Fourteenth Amendment, which prohibits a state actor from depriving "any person of life, liberty, or property, without due process of law."[4]

A. First Amendment Claims Against Allegheny County and Del Prete

In Count I, Plaintiff alleges that the County and Del Prete retaliated against him for asking about who stole his jewelry, as well as for speaking up about the failure to provide him with appropriate medical care, protect him from COVID-19 and provide him with a gluten-free diet. (FAC ¶¶ 30-31.)

_____

prevention measures at the ACJ.
[4] While the FAC also mentions the Fourth Amendment (FAC ¶ 8), it does not plead a Fourth Amendment claim.

10

A claim for retaliation for the exercise of First Amendment rights requires the existence of a constitutionally protected activity, retaliation by a governmental entity against the plaintiff and a causal relationship between the protected activity and the retaliation. *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). "Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." *Miskovitch v. Hostoffer*, 721 F. Supp. 2d 389, 396 (W.D. Pa. 2010).

Plaintiff alleges that he engaged in protected activity by asking who stole his jewelry, by requesting medical treatment and by filing grievances. These actions constitute protected activity for purposes of a retaliation claim. *See Fantone v. Latini*, 780 F.3d 184, 192 n.8 (3d Cir. 2015) ("The filing of a prison grievance is an activity protected by the First Amendment."); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (allegation of false charge of misconduct in retaliation for filing complaints is conduct protected by the First Amendment). Thus, it must be determined if Plaintiff was subject to retaliatory treatment based on engaging in protected activities.

While Count I is brought only against the County and Del Prete, Paragraph 31 cross-references numerous other paragraphs of the FAC in which he claims to allege "significant adverse retaliatory action." Most of these paragraphs allege either that he filed a grievance—which is not an adverse action—or that his grievance was denied or "deemed invalid" for various reasons. Notably, however, the denial or rejection of a grievance does not represent retaliatory action. "The rejection or denial of grievances does not, by itself, suggest that the action was adverse or retaliatory. Moreover, any use of words, including threatening or offensive language, does not constitute retaliatory action." *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa.) (citations omitted), *aff'd*, 358 F. App'x 302, 306 (3d Cir. 2009) ("threats alone do not constitute

retaliation"). *See also Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) ("The denial of grievances is not an 'adverse action' for retaliation purposes.")[5]

The only individual defendant named in Count I is Del Prete, but Plaintiff does not allege that he asked Del Prete for the names of the jail personnel who stole his jewelry. Rather, the FAC alleges that Plaintiff asked unnamed individuals for these names in January 2020. Plaintiff further alleges that in August and September 2020, Del Prete denied grievances that he had submitted regarding this issue. Neither of these matters represent retaliatory conduct by Del Prete. He is not alleged to have been involved in the issue related to Plaintiff's jewelry and as discussed, the denial of grievances does not represent retaliatory activity.

The only other claimed retaliatory conduct by Del Prete is that in July 2020 and again in April 2021, Plaintiff was scheduled to be examined by medical specialists, but these appointments were cancelled by John Doe(s) at the instruction of Del Prete in order to punish Plaintiff for complaining about jail conditions. Assuming the truth of these allegations as required at the motion to dismiss stage, Plaintiff has adequately pleaded that Del Prete engaged in retaliatory conduct. *See Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) ("An adverse consequence need not be great in order to be actionable[;] rather, it need only be more than *de minimis*.")

A plaintiff "can establish the third element of a prima facie case of retaliation with evidence of: (1) an unusually suggestive temporal proximity between the protected activity and

---

[5] The County Defendants also argue that Plaintiff cannot raise an independent claim about the denial of his grievances because inmates do not have a constitutionally protected right to a grievance procedure. *See Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005). Plaintiff clarifies in his response brief that he is not raising the grievance denials as individual claims (ECF No. 63 at 8). Nevertheless, he argues that because Del Prete's alleged reasons for denying his grievances were "preposterous," he can cite them as adverse actions. This argument is unsupported and contrary to the authority cited above.

the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. However, the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Watson*, 834 F.3d at 424 (footnotes and citations omitted).

Again, applying a liberal interpretation of Plaintiff's allegations in the light most favorable to him, he asserts that he filed grievances as early as March 2020. Between March and July 2020, numerous medical appointments were scheduled for Plaintiff to be examined by gastroenterologists and/or cardiologists, but allegedly, all of these appointments were cancelled at the instruction of Del Prete in order to punish Plaintiff for complaining about jail conditions. Based on these allegations, Plaintiff has plausibly pleaded a pattern of antagonism coupled with the timing of the cancellations that, for purposes of resolving a motion to dismiss, may establish a causal connection between his protected conduct and the alleged retaliation.

Plaintiff also claims that after he experienced additional medical issues in April 2021, he learned that Del Prete maliciously cancelled his previous specialist appointments in retaliation for his requests for medical care. Reading the FAC liberally and given the number of grievances and complaints that Plaintiff asserted while in the Allegheny County Jail, it is at least plausible that the cancellations were in temporal proximity to the protected activity.

Therefore, Plaintiff has stated a claim for First Amendment retaliation against Del Prete.

With respect to the County, as the Court of Appeals recently reiterated:

To plead a municipal liability claim, a plaintiff must allege that "a [local] government's policy or custom ... inflict[ed] the injury" in question. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not

> specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (Becker, J.); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001) ("A custom ... must have the force of law by virtue of the persistent practices of state [or municipal] officials." (internal quotation marks omitted)).

*Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). Plaintiff has not alleged any policy or custom of retaliation on the part of the County, and thus he has not stated a First Amendment claim against the County.

Finally, while Plaintiff alleges that Lafever put him on a 48-hour cell restriction for having inquired about who doubled his medication (FAC ¶¶ 78-81) and that he was sent to "the hole" by "Corrections Officer Doe" by insisting that he was sick, neither party is identified as a defendant in Count I. Therefore, Count I will be dismissed with prejudice other than with respect to Del Prete.

B.  Fourteenth Amendment Failure to Provide Medical Treatment Claim

In Count II, Plaintiff alleges a Fourteenth Amendment substantive due process claim against the County, Del Prete and Lafever for failure to provide medical treatment.[6] The County Defendants moves to dismiss because the individual defendants are not medical providers. Further, the County contends, Plaintiff cites no facts which would suggest that these defendants were personally involved in these actions or that support a finding that they were deliberately indifferent to his serious medical needs.

---

[6] The County Defendants state that Count II is also alleged against Sarver, but that his alleged failure to hand Plaintiff a mask does not constitute medical care (ECF No. 61 at 22). However, Sarver is named only in Count III, based on a claim of failing to protect Plaintiff from COVID-19. The County Defendants also refer to Count II as stating an "unspecified procedural due process claim" (*Id.*) Although the SAC contained a procedural due process claim, the FAC does not.

Because Plaintiff was a pretrial detainee at ACJ,[7] his claim regarding his medical treatment arises under the Fourteenth Amendment's due process clause rather than the Eighth Amendment's cruel and unusual punishments clause. *See Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005). *See also Murray v. Keen*, 763 F. App'x 253, 255 (3d Cir. 2019) ("sentenced prisoners are protected only from punishment that is 'cruel and unusual' while pretrial detainees are protected from any punishment") (citing *Hubbard,* 399 F.3d at 166-67)).

Although the Eighth Amendment does not apply, "the substantive due process guarantees afforded detainees … at least as robust as Eighth Amendment protections afforded prisoners." *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020). That is, Plaintiff must allege facts that would demonstrate: "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citation omitted). "Allegations of medical malpractice are not sufficient to establish a Constitutional violation" and "mere disagreement as to the proper medical treatment is also insufficient." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

Whether the need is "sufficiently serious" is an objective inquiry, but the issue of whether the defendants were deliberately indifferent under the Eighth Amendment has been treated as a subjective question. *See Farmer v. Brennan*, 511 U.S. 825, 834, 847 (1994) ("a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by

---

[7] The County Defendants note that, on January 29, 2021, Plaintiff was sentenced in a federal criminal case, No. 18-cr-68 (ECF No. 169), after which he was no longer a pretrial detainee. In his brief, Plaintiff states that he is not alleging an Eighth Amendment claim (ECF No. 63 at 2).

failing to take reasonable measures to abate it.")[8]

As the County Defendants assert, Plaintiff complains about a myriad of medical needs to which Defendants allegedly were deliberately indifferent. He claims that he was prescribed medication for fluid retention that he believes was incorrect; he should have been seen for high blood pressure between February 18, 2020 and March 9, but was not seen until March 18 (although he does not allege that any of the named defendants prevented this from happening or even knew about it); he had severe abdominal pain on April 9, 2020 and a nurse told him to "just deal with it"; he did not receive the treatment he requested for abdominal pain on April 23, 2020; he had a medical emergency on June 19, 2020 and was taken to the infirmary, where two ECGs were done but he was told they were "essentially unremarkable"; he was taken to the infirmary again on July 6, 2020 but Dr. Park (who is no longer a defendant in this case) referred him to a psychiatrist; he developed COVID-19 and was denied Tylenol and told to drink more water; and Dr. Stechschulte (who is no longer a defendant in this case) took him off high blood pressure medication because his pressure was running low.

According to the County Defendants, these allegations do not state a claim for deliberate indifference to his serious medical needs. Rather, Plaintiff's allegations confirm that he was receiving medical care on a regular basis, but merely disagrees with the nature of the care he

---

[8] In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court held that, in an excessive force case, pretrial detainees must show only that the use of force was objectively unreasonable, rather than that the officers were subjectively aware that their use of force was unreasonable because of the different wording of the Eighth and Fourteenth Amendments. Circuit courts are split on whether *Kingsley* extends to other situations, including medical treatment. The Third Circuit has not specifically addressed this question. *But see Hope*, 972 F.3d at 330 (in vacating a temporary restraining order that would have released immigration detainees during the early days of the COVID-19 pandemic because their continued detention put them at imminent risk of death or serious injury, the court continued to refer to deliberate indifference as a "subjective standard of liability.")

received or believes that he should have received additional treatment.

In his responsive brief, Plaintiff asserts that various paragraphs in the FAC support this claim (ECF No. 63 at 5). He alleges that nurse "Michael" (who is no longer a defendant in this case) threatened him with punishment if he continued to "ask for medical advice when there is nothing wrong with him" (¶ 40). Further, physician's assistant Chrzastowska (who is no longer a defendant in this case) told him to "just deal with the pain" and Ms. Froelich (who was never named as a defendant) deemed his grievance about this incident "invalid" because he had an appointment with an outside gastroenterologist (¶¶ 43, 45). Corrections Officer Doe sent him to "the hole" for having refused an order to return to his cell (¶ 40). Further, Del Prete caused his medical appointments to be cancelled for complaining about jail conditions (¶ 69) and Lafever punished him with a 48-hour cell restriction for asking who doubled his medication (¶ 81). He also alleges that he was denied COVID-19 testing despite being negligently exposed to the disease by being housed with other inmates who were positive. (¶ 83.) Finally, he did not have his blood pressure monitored regularly. (¶ 84.)

Many of these allegations merely reflect a layperson's disagreement with his medical treatment. The fact that Plaintiff filed "numerous grievances" about medical care issues represents his own views about the medical treatment he received and for that reason, do not state facts that support a claim that Defendants were deliberately indifferent to his serious medical needs. Moreover, neither Del Prete's alleged cancellation of his appointments nor Lafever's retaliatory cell restriction relate to the rendering of medical care. Indeed, neither Lafever nor Del Prete are medical personnel.

Some of Plaintiff's allegations assert wrongdoing against individuals who are not defendants in this case, including medical personnel. However, he fails to allege facts to support

a claim that any of the named defendants can be liable for actions by these third parties. No facts have been pleaded that support a claim that either Del Prete or Lefever had the requisite personal involvement in any alleged deliberate indifference to Plaintiff's serious medical needs. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Personal involvement can be shown by alleging personal direction or actual knowledge and acquiescence. *Rode*, 845 F.2d at 1207. Plaintiff does not allege that Del Prete or Lafever directed or knew and acquiesced in any deliberative indifference to Plaintiff's medical needs.[9] Further, the County Defendants contend, they cannot be deliberatively indifferent simply by deferring to the judgment of medical personnel. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (corrections personnel could not be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor).

Finally, with respect to the County, Plaintiff's failure to plead any policy, custom or practice that could form the basis for liability against the County is fatal to his claim against it.

For all of these reasons, the motion to dismiss Count II will be granted with prejudice.

C.   Fourteenth Amendment Claim Relating to COVID-19

In Count III, Plaintiff alleges that the County, Harper, Williams, Sarver and Del Prete failed to protect him from contracting COVID-19. The County Defendants argue that their COVID-19 response was appropriate and that Plaintiff has failed to plead facts demonstrating the personal involvement of any individual defendants.

As it relates to the County, the County Defendants contend that the ACJ's response to COVID-19 was at least as robust as those measures found acceptable in a Fourteenth

---

[9] As discussed previously, Plaintiff's allegations that Del Prete maliciously cancelled medical appointments states a claim for First Amendment retaliation.

Amendment challenge to the treatment of immigration detainees in *Hope v. Warden York County Prison*, 972 F.3d 310, 327 (3d Cir. 2020). In that case, the court held that there are two ways for to state a claim for denial of substantive due process as it relates to COVID-19 exposure: (1) the facts as alleged reflect that "the Government imposed the challenged conditions for the express purpose of punishment, and if not, whether they are rationally connected to a legitimate purpose but excessive in relation to its purpose," *id.* at 328; or (2) that "the Government knew of and disregarded an excessive risk to their health and safety." *Id.* at 329 (citations omitted). *See also id.* at 330 (recognizing that "a failure to eliminate all risk [does not] establish that the Government was deliberately indifferent to their serious medical needs.")

The ACJ policy established various procedures for social distancing, cleaning, testing and quarantine.[10] Masks were available. The policy did not address vaccinations, but the County Defendants note that Plaintiff's allegations primarily concern activity that occurred prior to December 11, 2020, a time frame when vaccines for COVID-19 were only available on a very limited basis.

Plaintiff also contends that he is not challenging the ACJ's actual COVID-19 plan, but the deviations from it he observed. For example, he alleges that no more than ten prisoners were supposed to be out of their cells at any given time, but he saw twenty prisoners congregating. He also alleges that Sarver refused to give him a mask on one occasion, that kitchen workers were not being screened and that social distancing was not being consistently observed. Thus, he

---

[10] Plaintiff contends that the Court cannot consider ACJ's COVID-19 plan, which the County Defendants attached to their motion to dismiss. As noted above, however, the plan is part of a Consent Order, a public record of which the Court may take judicial notice and may be considered on a motion to dismiss. *See Group Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016) (reviewing consent decree and consent order in the context of a motion to dismiss).

argues, despite the requirements of the Consent Decree, the Defendants were not following these practices.

Based on the *Hope* case, numerous district courts have held that "where a detention facility has taken concrete steps toward mitigating the medical effects of COVID-19, an incarcerated person will fall 'well short' of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even though they cannot entirely 'eliminate all risk' of contracting COVID-19, notwithstanding even serious preexisting medical conditions the prisoner may have." *Pumba v. Kowal*, 2022 WL 2805520, at *4 (E.D. Pa. July 18, 2022) (quoting *Hope*, 972 F.3d at 330-31). In that case, the court rejected a claim based on a sergeant permitting a pod worker who tested positive to clean the plaintiff's cell without wearing a mask and presumably exposing him to COVID-19. The court further noted that the plaintiff alleged that the sergeant acted negligently, resulting in the spread of the virus, but "a claim based on mere negligence is insufficient to allege a plausible Eighth Amendment violation." *Id.* at *5. *See also Greene v. Ellis*, 2022 WL 4288279, at *3 (D.N.J. Sept. 16, 2022) (prisoner's allegations that jail did not provide adequate social distancing and that there was not a mask exchange program was insufficient); *Chapolini v. City of Philadelphia*, 2022 WL 815444, at *15 (E.D. Pa. Mar. 17, 2022) (allegations that prisoner was housed with multiple cellmates who did not go through proper quarantine insufficient).[11]

---

[11] Plaintiff contends that the County Defendants "miss the mark" of his claim, which is about the failure to protect him from COVID-19. However, as explained in the text, a failure to protect claim in this context means either that Plaintiff was subjected to "punishment" or that prison officials were deliberately indifferent to his particular vulnerability to COVID-19. *Pumba*, 2022 WL 2805520, at *4. In addition, he cites Third Circuit Model Jury Instruction § 4.14, which concerns the state-created danger theory. But there is no need to apply that theory in a jail context because "the Due Process Clause of its own force requires that conditions of confinement satisfy certain minimal standards for pretrial detainees." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 127 (1992) (citation omitted).

Several judges in this district, when presented with claims alleging that conditions at ACJ exposed pretrial detainees to COVID-19, have held that the complaints did not state a claim under the Fourteenth Amendment. *See Fletcher v. Harper*, 2021 WL 4264870, at *4 (W.D. Pa. Sept. 20, 2021) (Eddy, Chief M.J.) (inmate tested positive after being housed with another positive inmate, alleged that jail was overcrowded, unsanitary and did not allow for social distancing); *Jones v. County of Allegheny*, 2022 WL 2806779, at *5 (W.D. Pa. June 24, 2022) (Lenihan, M.J.) (listing seven events involving inadequate quarantine, failure of medical official to change gloves, tier workers responsible for distribution of commissary, meals and sanitation tested positive, etc.), *report and recommendation adopted*, 2022 WL 2803111 (W.D. Pa. July 18, 2022) (Hardy, J.); *Kendrick v. Harper*, 2021 WL 1312916, at *3 (W.D. Pa. Apr. 8, 2021) (Kelly, M.J.) (inmates locked down for 23 hours a day, no showers or other activity, no fruit to support their immune systems, not enough cleaning supplies). The Court is unaware of any decision concluding otherwise and Plaintiff has provided no basis for reaching a different conclusion in this case.[12]

Thus, even accepting as true Plaintiff's allegations that ACJ's COVID-19 response was not always completely compliant with the requirements of the Consent Order, these allegations do not support a claim of deliberate indifference by the County. As Judge Lenihan observed in a similar case: "Simply because the execution of COVID-19 protocols may have been nonoptimal at times, the alleged deficiencies fall well short of evidencing deliberate indifference by the named Defendants." *Jones*, 2022 WL 2806779, at *6. *See also Easley v. Wetzel*, 2021 WL

---

[12] The Court notes that, on April 27, 2020, Judge Fischer denied Plaintiff's request for release pending sentencing stating, in part, that the record indicated that his "medical needs are being addressed at the ACJ." *United States v. Porter*, 2020 WL 1984318, at *5 (W.D. Pa. Apr. 27, 2020). Judge Fischer also noted that, as of that date, he had not established that he had been exposed to the virus; in this case, he alleges that he was infected on July 6, 2020.

1200214, at *6 (W.D. Pa. Feb. 26, 2021) (Lanzillo, M.J.), *report and recommendation adopted*, 2021 WL 1197483 (W.D. Pa. Mar. 30, 2021).

Turning to the liability of the individual defendants, the Court of Appeals has held that "to be liable under § 1983, each individual defendant "must have personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. These allegations must be made with appropriate particularity. *Id.*

As already discussed, even accepting as true Plaintiff's allegations that ACJ's COVID-19 response was not always completely compliant with the requirements of the Consent Order, these allegations do not support a claim of deliberate indifference against Harper or Williams. Plaintiff has not pleaded any facts that either of them directly participated in permitting inmates in excess of the number required by the ACJ policies out of their cells or otherwise violating the COVID policy. The only allegation regarding Sarver[13] is that he failed to provide Plaintiff with a mask on one occasion, but the only alleged harm (beyond Plaintiff's hurt feelings) is his speculation that this placed him at an increased risk of exposure to COVID-19. Finally, the only allegations against Del Prete are that he denied grievances and cancelled appointments, actions that do not relate to increased risk of COVID-19 exposure. Simply put, these allegations are insufficient to show personal involvement by the named defendants in being deliberately indifferent to Plaintiff's serious medical needs.

Further, the FAC fails to allege sufficient facts to state a claim against Harper or Williams

---

[13] The County Defendants erroneously state that Sarver is named as a defendant only in Count II, which contains failure to provide medical care and procedural due process claims. In fact, Sarver is named only in Count III.

based on supervisory liability. The Court of Appeals has held that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

As already discussed, Plaintiff has failed to allege facts that would support a claim that Harper or Williams personally directed others to violate the ACJ COVID policies. Further, Plaintiff has not pleaded sufficient facts to state a claim that either Harper or Williams had personal knowledge and acquiesced in a subordinate's unconstitutional conduct as it relates to any issues with implementation or enforcement of ACJ's COVID policies.

For all of these reasons, the motion to dismiss Count III will be granted with prejudice.[14]

D.  Fourteenth Amendment Claim Relating to Gluten-Free Diet

In Count IV, Plaintiff alleges that "Defendants" denied him a gluten-free diet from July 29, 2020 until October 21, 2020. However, the only named defendant is the County.

Plaintiff has not alleged that the County had a policy or custom of not providing special diets. On the contrary, he indicates that the jail did provide such diets, but alleges that "Defendants" failed to provide a gluten-free diet to him until he filed this case. He argues that: "Where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly." *Carter v. Smith*, 2009 WL 3088428, at *6 (E.D. Pa. Sept. 22, 2009) (citation omitted). *See also Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003) (acknowledging

---

[14] The County Defendants also argue that all of the individual defendants are entitled to qualified immunity as to this claim. The Court need not reach this argument.

claim against supervisory personnel in prison).

However, he does not allege that any of the named defendants in this case were responsible for these decisions. See FAC ¶¶ 135-42 (alleging that "Ms. Murhead" deemed his grievances about the failure to provide a gluten-free diet to be invalid for various reasons). As the County Defendants note, he pleads no facts that Harper or Williams had personal knowledge, directed or acquiesced in the alleged denial of the gluten-free diet. Indeed, they are not named as defendants with respect to this claim. Moreover, he fails to plead any facts to show that the County maintained an unconstitutional policy or practice to withhold gluten-free diets to prisoners who require such a diet.

Therefore, with respect to Count IV, the County Defendants' motion to dismiss will be granted with prejudice.

      E.  <u>Futility of Amendment</u>

As noted above, two factors that weigh against allowing further amendment are "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment." *Foman*, 371 U.S. at 182. Because Plaintiff is represented by counsel and has already amended the Complaint four times, it would be futile and inappropriate to allow further amendment. Thus, dismissal of the claims discussed herein will be with prejudice.

**V.**    **<u>Conclusion</u>**

For these reasons, the Motion to Dismiss filed by the County Defendants (ECF No. 60) will be granted in part and denied in part. An appropriate order follows.

                          BY THE COURT:

                          /s/Patricia L. Dodge
Dated:  March 21, 2023         PATRICIA L. DODGE
                          United States Magistrate Judge