IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RASHIKA PORTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 20-1588 |
| | ) | |
| LOUIS DEL PRETE, | ) | Magistrate Judge Dodge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION[1]**

Plaintiff Rashika Porter, who was previously incarcerated at the Allegheny County Jail ("ACJ"), brings this counseled civil rights action under 42 U.S.C. § 1983. The sole remaining claim alleges that Defendant Louis Del Prete retaliated against Plaintiff by cancelling his appointments with outside medical providers because Plaintiff had filed grievances. Plaintiff claims that Del Prete's actions violated Plaintiff's First Amendment rights under the United States Constitution.

Presently pending before the Court is Defendant's motion for summary judgment (ECF No. 80). For the reasons that follow, his motion will be granted.

I. **Relevant Procedural Background**

Plaintiff commenced this action in October 2020 and filed multiple amended complaints thereafter. Plaintiff's Fourth Amended Complaint ("FAC"), as later corrected (ECF No. 59), is the operative Complaint. In Count I of the FAC, Plaintiff alleged that he was subjected to retaliation by Allegheny County (the "County") and Del Prete[2] after he complained about the

---

[1] The parties have fully consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).
[2] Del Prete was identified in multiple amended complaints as a correctional officer. Del Prete has since been identified as a clinic coordinator at ACJ.

lack of medical care and the failure to provide a gluten-free diet, and because he asked for the names of the ACJ officers who stole his property. He contends that this conduct represented a violation of his rights under the First Amendment. He also asserted a Fourteenth Amendment substantive due process claim against the County, Jay Lafever and Del Prete for failing to provide him with medical treatment in Count II. In Count III, Plaintiff raised a substantive due process claim against Del Prete, Orlando Harper, Laura Williams and Hunter Sarver arising out of their failure to protect him from the COVID-19 virus. Finally, Plaintiff asserted a substantive due process claim against the County for failing to provide him a gluten-free diet in Count IV.

On July 5, 2022, Defendants filed a motion to dismiss (ECF No. 60). The Court issued an opinion and order on March 21, 2023 (ECF Nos. 64, 65) that granted the motion in part and denied it in part. As a result, all claims and parties were dismissed other than the First Amendment claim against Del Prete that relates solely to the cancellation of Plaintiff's off-site medical appointments.

Following the completion of discovery, Del Prete filed a motion for summary judgment (ECF No. 80), which has been fully briefed (ECF Nos. 81, 85, 91).

II. **Factual Background**

Plaintiff was an inmate housed in the ACJ from August 24, 2019 to May 12, 2021. Louis Del Prete was employed by the ACJ as the Clinic Coordinator from 2019 to late 2020 or early 2021. Plaintiff contends that at numerous times in 2020, he was scheduled to be seen by medical specialists outside of the jail, but these appointments were cancelled by Del Prete or others at his direction in order to punish Plaintiff for complaining about jail conditions.

Inmates with health issues are seen at the ACJ clinic and as necessary, by medical providers outside of the ACJ. Del Prete's duties at the ACJ were to supervise the clinic, schedule

medical providers, supervise staff, increase appointment structures, and additional tasks as assigned by his supervisors. His supervisors were the Health Services Administrator and the Deputy Health Services Administrator. (Defendant's Concise Statement of Material Facts ("DCSMF") ¶¶ 1-5) (ECF No. 81.) His supervisors also included his "chain of command," meaning the captains, majors and the sergeants at ACJ who had operational control over him. (Plaintiff's Response to Defendant's Concise Statement of Material Facts ("PRDCSMF") ¶ 5) (ECF No. 86).

According to Del Prete, he directly supervised only one clinic nurse, Sandra Durso, but indirectly, he supervised whoever was on duty in the clinic that day. This included administrative assistant Nichole Froehlich. (DCSMF ¶¶ 6-9.) By contrast, Plaintiff contends that Del Prete supervised others. (PRDCSMF ¶ 7.)

The procedure for scheduling or cancelling off-site appointments with a medical provider outside was as follows:

- A diagnosis would be made by a medical provider ant then placed in TechCare, the ACJ's electronic medical record.

- The ACJ Medical Director, Dr. Stechschulte, would review the consults and approve those he felt were appropriate for a higher level of care.

- After approved, the administrative assistant would process the booking for the appointment by checking the calendar because there are only a limited number of inmates that can go to outside appointments each day. This limit is not a consistent number.

- When the administrative assistant finds an open day, they call to make the appointment. When the appointment is made, it is placed on the schedule and into TechCare.

- The inmate is informed that an appointment has been made within a day or two but is not informed of the date of the appointment for security reasons.

(DCSMF ¶ 11.)[3] The same process is followed when inmates are also sent outside the ACJ for diagnoses. All outside appointments are approved by Dr. Donald Stechschulte or another physician if he is not available. (DCSMF ¶¶ 12-13.)[4]

The most common reason for the cancellation of appointments was staff shortages. (DCSMF ¶¶ 17-18.) Appointments were also cancelled if there are not enough available correctional officers to transport the inmate or if the inmate has engaged in violent behavior. (*Id.*)

If too many appointments were scheduled for a day, Del Prete would take the matter to a physician so that it could be determined whose appointments should still go forward. Del Prete states that he had no part in this selection process other than delivering the information and occasionally making the call to notify the outside provider of the cancellation if no one else was available. Outside appointments involving federal inmates require approval from the Federal Marshal's Service. (*Id.* ¶¶ 19-21.)

In an attempt to counter Del Prete's statement of facts, Plaintiff cites to his own testimony (PRDCSMF ¶ 20), as follows:

> My understanding, from a third party who relayed the message to me that Louis, Mr. Del Prete, was the person in the jail that made the appointments and cancelled them. I went to this individual with an issue that I had pertaining to me going to an outside doctor and my appointments getting cancelled, because my blood pressure was at lethal levels and I was -- so I was inquiring anybody that came on the pod as to why my appointments got cancelled four or five times.

(Porter Dep. 20:14-25.) (ECF No. 81 Ex. 4.) Plaintiff could not identify the "third party" who

---

[3] Plaintiff responds that this description is "not material because this case is about the non-scheduling and/or cancellation of appointments." (PRDCSMF ¶ 11.) However, it is material because Del Prete's statement is about the scheduling *and cancellation* of appointments.
[4] Plaintiff responds that Del Prete has described the "normal" procedure, not the process of "non-scheduling and/or cancellation of appointments." (PRDCSMF ¶¶ 12-13.)

4

told him this information and does not know why his appointments were cancelled. (Porter Dep. 21-23.)[5]

According to Del Prete, if an appointment has to be cancelled, either Nichole Froehlich or Diana Ramsey, both of whom are administrative assistants, would be notified and begin the process of rescheduling. Outside appointments that are to be cancelled are reviewed by a physician to determine whether it is too serious to cancel. If it is cancelled, the outside provider is notified as soon as the ACJ clinic opens. (DSCMF ¶¶ 14-16.) Plaintiff notes that Ramsey testified that Del Prete (and others) had the authority to cancel appointments and override her entries and that she complained that "someone" was doing so surreptitiously in the spring of 2020. (PRDCSMF ¶ 15.)

Froehlich testified that she could not remember a time when Del Prete informed her that a prisoner's outside medical appointment needed to be cancelled (Froehlich Dep. 39:17-19),[6] which Plaintiff contends undermines her credibility. (ECF No. 85 at 6 n.2.).[7]

According to Del Prete, he did not schedule, cancel, or prioritize off-site medical appointments as part of his duties. (DCSMF ¶ 10) Plaintiff disputes the statement (PRDCSMF ¶ 10), citing Del Prete's testimony that if Froehlich was unavailable, he would occasionally make phone calls to notify an outside clinic that an inmate would not be coming. Similarly, Del Prete occasionally told Froelich or another administrative assistant that an appointment was cancelled. Notably, however, this testimony does not support a conclusion Del Prete was the person who

---

[5] Hearsay evidence may be considered on summary judgment if the out-of-court declarant could later present the evidence in a form that would be admissible at trial. *See Shelton v. Univ. of Med. & Dentistry*, 223 F.3d 220, 223 n.2 (3d Cir. 2000). However, without identification of the speaker, this hearsay evidence, which is being offered for its truth, is inadmissible.
[6] ECF No. 87 at 3.
[7] Presumably, if Froehlich was attempting to protect Del Prete, she would tell "the same story" he did, i.e., that he conveyed to her the decision made by a doctor to cancel the appointment.

made the decision to cancel the appointment.

Del Prete testified that the physicians made the decision as to which appointments to cancel (Del Prete Dep. 140:14-25.)[8] He notes that Plaintiff has not produced any evidence that Del Prete cancelled any of his off-site appointments and the fact that Del Prete *could have* cancelled one of Plaintiff's appointments is insufficient to show that he actually did so. (Defendant's Reply to Plaintiff's Response to Defendant's Counterstatement of Facts ("DRPRDCSF") ¶ 10) (ECF No. 92).[9] Plaintiff testified that he does not know why his outside medical appointments were cancelled and Del Prete never told Plaintiff that he made or cancelled a medical appointment. (DCSMF ¶¶ 28-29), facts which Plaintiff views as immaterial. (PRDCSMF ¶¶ 28-30.) While Plaintiff has not offered any evidence that Del Prete made the independent decision to cancel one of his off-site medical appointments, he suggests that "the jury could also be entitled to make an adverse inference that Del Prete either personally cancelled and/or informed Ms. Froelich [sic] to start the process of cancelling Plaintiff's outside appointments." (PRDCSMF ¶ 10.).

Between March 2020 and May 2021, Plaintiff submitted 89 grievances. Del Prete did not respond to all inmate medical grievances. He did, however, respond to Plaintiff's grievances on July 1, 2020 (regarding a cancelled appointment), July 6, 2020 (medical care), July 8, 2020 (Dr. Stechschulte not wearing a mask) and July 9, 2020 (medication appeal). (DCSMF ¶¶ 22-26.) Plaintiff asserts that Del Prete's responses to his grievances "tend to show a pattern of

---

[8] ECF No. 90.

[9] Plaintiff contends that there are records that were requested in discovery that explain the reasons why his appointments were cancelled but they were not produced. Defendant replies that no request was directed to him for records of cancellations of Plaintiff's outside medical appointments. Rather, a subpoena was directed to Allegheny County by Plaintiff in 2023. (DRPRDCSF ¶ 10.) Del Prete left the ACJ in early 2021.

antagonism, plan, malice, and intent." (PRDCSMF ¶¶ 22-26.) His belief that Del Prete was being vindictive was based on his perception that Del Prete had an "arrogant attitude and [was] talking down" to him. (DCSMF ¶ 32.) Del Prete admits that it could appear "malicious and vindictive" when he responded to Plaintiff's grievance that a provider's behavior was "neglegace" [sic] by acting as if Plaintiff was discussing a particular medication that Del Prete could not find in a Physician's Desk Reference (PDR) instead of recognizing it as the word "negligence." (PRDCSMF ¶ 32.)

The COVID-19 public health emergency was declared on March 13, 2020, and continued past the date Plaintiff was released from the ACJ. The pandemic created health care difficulties at the ACJ and resulted in many cancelled appointments. (DCSMF ¶¶ 33-37; PRDCSMF ¶¶ 33-37.) Nonetheless, it is undisputed that on or about October 23, 2020, Plaintiff had an outside appointment with a gastroenterologist and a cardiology consultation on or about April 30, 2021.

### III. Standard of Review

The Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005); *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

Plaintiff repeatedly argues that written records exist that provide the reason his appointments were cancelled and that these records were requested in discovery but not produced. As such, he argues, a jury could draw an adverse inference against Del Prete based on the failure to produce this evidence. According to Del Prete, however, no such document request was directed to him, and as he has not worked at the ACJ since 2021, he would not have access to ACJ records after that time. Moreover, in July 2023, a subpoena was directed to Allegheny County, which responded to some requests and objected to others. At no time since has Plaintiff moved to compel additional records or dispute the County's objections.

In order for a jury to draw an adverse inference from the failure to produce evidence, "it is essential that the evidence in question be within the party's control." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) (citation omitted). Plaintiff has not explained how or why Del Prete would have custody or control of ACJ records. Neither has he argued that Del Prete otherwise impeded or interfered with the production of documents within the control

8

of Allegheny County. Thus, there is no basis from which an adverse inference may be drawn against Del Prete, the only defendant in this lawsuit.

In his brief, Plaintiff references and attempts to rely upon Rule 56(d), which provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Invoking this rule, Plaintiff concludes his brief in opposition with the following argument:

> [P]ursuant to Fed.R.Civ.P. 56(d), to the extent that the Court is inclined to grant summary judgment on the basis of Plaintiff's lack of personal knowledge, Defendant should be compelled to produce the TechCare and email documents which demonstrate the reasons for cancellation, and be subject to additional depositions regarding same. Plaintiff however argues that the appropriate course of action is to deny summary judgment outright on any of these five arguments [that Defendant presents].

(ECF No. 85 at 7.)

Rule 56(d) simply does not apply here, however. First, Plaintiff has not submitted an affidavit or declaration stating that he cannot present facts essential to justify his opposition to Del Prete's motion for summary judgment. And as previously discussed, Del Prete is no longer employed at the ACJ and has no access to its records. Moreover, Plaintiff fails to explain why he is only seeking this information, which is central to his claim, at this juncture. Discovery closed on October 18, 2023. At no time prior to or after the conclusion of discovery did Plaintiff move to compel additional discovery or otherwise seek relief based upon his present position

9

that he has been unable to obtain relevant evidence to support his case. Simply put, Plaintiff cannot oppose Del Prete's motion by arguing that records may exist that create a material issue of fact regarding the cancellation of Plaintiff's appointments with outside medical providers.

## IV.    Analysis

Plaintiff's claim is asserted under 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). *See also Baker*, 443 U.S. at 140; *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Plaintiff's claim is raised under the First Amendment, which protects freedom of speech and prohibits retaliation for exercising this right. A claim of retaliation for the exercise of First Amendment rights requires the existence of a constitutionally protected activity, retaliation by a governmental entity against the plaintiff and a causal relationship between the protected activity and the retaliation. *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). "Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." *Miskovitch v. Hostoffer*, 721 F. Supp. 2d 389, 396 (W.D. Pa. 2010).

Plaintiff correctly asserts that he engaged in protected activity by filing grievances. *See Fantone v. Latini*, 780 F.3d 184, 192 n.8 (3d Cir. 2015) ("The filing of a prison grievance is an activity protected by the First Amendment."); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (allegation of false charge of misconduct in retaliation for filing complaints is conduct protected

by the First Amendment). Thus, it must be determined if Plaintiff was subject to retaliatory treatment based on his participation in protected activities.

Plaintiff contends that on multiple occasions, he was scheduled to be examined by medical specialists, but these appointments were cancelled by Del Prete or by others at the instruction of Del Prete in order to punish Plaintiff for complaining about jail conditions. If these allegations were supported by facts in the record, they would support a claim that Del Prete engaged in retaliatory conduct. *See Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) ("An adverse consequence need not be great in order to be actionable[;] rather, it need only be more than *de minimis*.")

However, as the Court of Appeals has held, "to be liable under § 1983, each individual defendant "must have personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. These allegations must be made with appropriate particularity. *Id.*

As explained above, Plaintiff fails to point to any record evidence nor can any such evidence be found in the record that Del Prete cancelled or had others cancel Plaintiff's outside medical appointments. Having no evidence on which to rely, Plaintiff instead argues that as Del Prete had the authority to cancel the appointments, he "could have" done so. While it is undisputed that the appointments were cancelled, there is no evidence that Del Prete did so or told his staff to do so. At most, Plaintiff offers inadmissible hearsay that a "third party" told him that Del Prete cancelled his appointments. Even if such evidence existed, however, the uncontroverted evidence is that on the occasions that a physician made the decision to cancel an

appointment, Del Prete typically conveyed the information about cancellation from the physician to an administrative assistant who made the actual phone call, or if an assistant was unavailable, he sometimes made the call. Indeed even if it can be assumed that Del Prete cancelled either or both of Plaintiff's appointments, Plaintiff has not cited to a single fact that supports a claim that he did so in the absence of a physician's direction.[10]

In *Rodriguez v. Thomas*, 299 F. Supp. 3d 618 (M.D. Pa. 2018), a case cited by Plaintiff, a physician's assistant (Potter) presented no evidence to refute Rodriguez's allegations that he was allowed to administer medication to him in the SHU but Potter undertook a "campaign of harassment" against Rodriguez in the SHU in retaliation to his efforts to bring legal action against him. Rodriguez testified to specific conduct that he observed and Potter merely denied it, creating a genuine issue of material fact for the jury to resolve. *Id.* at 643.

Here, by contrast, Plaintiff did not observe Del Prete engage in any wrongful conduct and he has no evidence from which the jury could conclude that Del Prete cancelled his outside medical appointments or caused them to be cancelled, let alone for a retaliatory reason. In the absence of any evidence that creates a genuine issue of material fact, Plaintiff cannot defeat summary judgment by mere supposition that a jury might disbelieve Del Prete. Indeed, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A plaintiff "can establish the third element of a prima facie case of retaliation with evidence of: (1) an unusually suggestive temporal proximity between the protected activity and

---

[10] It should also be noted that both appointments were during the COVID-19 pandemic, which resulted in many cancelled appointments for off-site medical care.

the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. However, the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Watson*, 834 F.3d at 424 (footnotes and citations omitted).

Because Plaintiff cannot point to any evidence in support of his claim that Del Prete cancelled his outside medical appointments, he similarly has failed to proffer any evidence that Del Prete did so for the purpose of retaliating against him for filing grievances. Certainly, there is record evidence to the effect that Del Prete appears to have responded in an unpleasant manner to one of Plaintiff's grievances by responding as if Plaintiff was describing a medication when it was obvious from the context that he was accusing one or more staff members of negligence. However, this incident is not temporally linked to the cancellation of an outside medical appointment and is also insufficient on its own to demonstrate a "pattern of antagonism" that Plaintiff contends Del Prete exhibited.

Thus, because there are no genuine issues of material fact that could support Plaintiff's claim of First Amendment retaliation against Del Prete, the motion for summary judgment will be granted.

### V. Conclusion

For these reasons, the Motion for Summary Judgment filed by Defendant Louis Del Prete (ECF No. 80) will be granted.

An appropriate order follows.

Dated May 23, 2024                                         BY THE COURT:

                                                           /s/Patricia L. Dodge
                                                           PATRICIA L. DODGE
                                                           United States Magistrate Judge